ABIGAIL GUILD *versus* CURTIS GUILD, Administrator.

Whether, in an action by a daughter, who, after becoming of age, and being unmar-
ried, continued to reside in her father's family and to be supported by him, against
the administrator of her father's estate, to recover for the performance of such
useful services as it is customary for a daughter to perform, the law raises the pre-
sumption, that she was entitled to pecuniary compensation therefor, and throws
the burden of proof on the defendant, to show that they were performed without
any view to such compensation, *quære.*

THIS was assumpsit for labor and services performed for
the intestate, who was the plaintiff's father.

At the trial, before *Wilde*, J., evidence was introduced to
prove, that after the plaintiff became twenty-one years of age,
she continued to live in her father's family, and rendered the
services for which she claimed compensation in this action;
but there was no express evidence to show, that her father
agreed to pay her wages, or to prove upon what terms she
lived in her father's family.

The defence rested on the ground, that the plaintiff's ser-
vices were gratuitous and not rendered under any expectation
of receiving wages or any compensation therefor, except by
voluntary presents and accommodation, or by the share she
might have expected to receive of the estate of her father,
who was a man of considerable property.  On this point cir-
cumstantial evidence was introduced on both sides.

The jury were instructed, that if they should find that the
plaintiff, after arriving at twenty-one years of age, had render-
ed valuable services to her father, she would be entitled to a
reasonable compensation therefor, unless they should be of
opinion that she did not perform the services under an expec-
tation of receiving wages or compensation, but with a view to
he share which she might hope to have in her father's estate,
by will or otherwise ; that if the plaintiff had proved, that she
had performed valuable services, she had made out a *primâ
facie* case, as the presumption would be, that she was to
receive compensation, unless it should appear, that the ser-
vices were gratuitous, and that such was the understanding of
the parties ; and that the burden of proof was on the defend-
ant, to establsh the fact, that the services were not rendered

Guild
*v.*
Guild.

under the expectation of wages or any pecuniary compensation.

The jury returned a verdict for the plaintiff.

If these instructions were incorrect, the verdict was to be set aside, and a new trial was to be granted ; otherwise, judgment was to be entered on the verdict.

*Oct. 31st,*
*1832.*

*Mann*, for the defendant, cited *St.* 43 *Eliz. c.* 2 ; 1 Bl. Comm. 454, note (6) ; *St.* 1793, *c.* 59, § 3 ; *Wallis* v. *Wallis*, 4 Mass. R. 135 ; *Pray* v. *Peirce*, 7 Mass. R. 381 ; 4 Cruise's Dig. 25 ; *Haliburton* v. *Inhab. of Frankfort*, 14 Mass. R. 214 ; *Jacobson* v. *Le Grange*, 3 Johns. R. 199 ; *Plume* v. *Plume*, 7 Ves. 258.

*Metcalf*, for the plaintiff, cited *James* v. *Bixby*, 11 Mass. R. 37, 40 ; *Osborn* v. *Governors of Guy's Hospital*, 2 Str. 728 ; *Little* v. *Dawson*, 4 Dallas, 111 ; *Le Sage* v. *Coussmaker*, 1 Esp. R. 187 ; *Lamb* v. *Bunce*, 4 Maule & Selw. 275 ; *Jewry* v. *Busk*, 5 Taunt. 302 ; *Jacobson* v. *Le Grange*, 3 Johns. R. 199.

SHAW C. J. afterwards drew up the opinion of the Court. This motion for a new trial, for an alleged misdirection to the jury in point of law, has been long held under advisement, on account of a difference of opinion upon the points of law, among the members of the Court ; and it has been often discussed, in the hope that this difference might be reconciled.

The point is, whether, where a daughter, after arriving at twenty-one years of age, being unmarried, continues to reside in her father's family, performing such useful services as it is customary for a daughter to perform, and receiving such protection, subsistence, and supplies of necessaries and comforts, as it is usual for a daughter to receive in a father's family, the law raises any presumption, that she is entitled to a pecuniary compensation for such services, and whether, after proving these facts, the burden of proof is on the defendant, to show that the services were performed without any view to pecuniary compensation.

Some of the Court are of opinion, that as it is the ordinary presumption, between strangers, that upon the performance of useful and valuable services in the family of another, it is upon an implied promise to pay as much as such services are

reasonably worth, so, after the legal period of emancipation, the law raises a similar implied promise from a father to a daughter.

Other members of the Court are of opinion, (confining the opinion to the case of daughters, and expressing no opinion as to the case of sons, laboring on the farm or otherwise in the service of a father,) that the prolonged residence of a daughter in her father's family after twenty-one, performing her share in the ordinary labors of the family, and receiving the protection and supplies contemplated in the supposed case, may well be accounted for, upon considerations of mutual kindness and good will, and mutual comfort and convenience, without presuming that there was any understanding, or any expectation, that pecuniary compensation was to be made ; that proof of these facts alone, therefore, does not raise an implied promise to make any pecuniary compensation for such services, or throw on the defendant the burden of proof to show, affirmatively, that the daughter performed the services gratuitously, and without any expectation of receiving wages or pecuniary compensation, but with a view to the share she might hope to receive in her father's estate or otherwise.

But the Court are all of opinion, that practically the question is of much less importance, than at first view it would appear. Those who think, that the law raises no implied promise of pecuniary compensation, from the mere performance of useful and valuable services, under the circumstances supposed, are nevertheless of opinion, that it would be quite competent for the jury to infer a promise, from all the circumstances of the case ; and that although the burden of proof is upon the plaintiff, as in other cases, to show an implied promise, the jury ought to be instructed, that if under all the circumstances of the case, the services were of such a nature as to lead to a reasonable belief, that it was the understanding of the parties, that pecuniary compensation should be made for them, then the jury should find an implied promise, and a *quantum meruit* ; but if otherwise, then they should find that there was no implied promise.

The conclusion, that the question is of less practical im-

portance, than might at first appear, is founded upon the obvious consideration, that it is scarcely possible that a case can be left to stand upon the mere naked presumption arising from the fact of the prolonged residence of a daughter, in the family of her father, and the performance of services. There must of necessity be a great diversity of circumstances, distinguishing one case essentially from another. Such a continued residence of a daughter, may, indeed, must be regarded under one of these three aspects; she may be a servant, or housekeeper, expecting pecuniary compensation for services ; or a boarder, expecting to pay a pecuniary compensation for accommodations and subsistence ; or she may be a visiter, expecting neither to make nor pay any compensation. Perhaps it might be safe to consider the latter predicament as embracing the larger number of cases.

Now the circumstances, under which the parties continue to reside together, and which must almost necessarily be disclosed in the progress of each trial, will go very far to show, in which of these relations the daughter stood. Such considerations as the following, among many others, would arise · what is the state and condition of the family as to affluence ; was the father carrying on a business or engaged in an employment usually requiring the aid of hired females ; had he been accustomed to employ such before the daughter came of age ; did he employ such afterwards ; had the father a wife living ; was she capable of managing her family ; or was he a widower ; did the daughter act as housekeeper ; had the father been accustomed to employ a housekeeper on wages ; did he cease doing so ; were there one, or two, or more daughters similarly situated ; did they share in the labors o the family, or did the plaintiff exclusively devote herself to the service of the family ; had the daughter property or means of her own, to support herself, or had she been employed on wages in other families. Many other considerations of a like kind might be suggested, some, and probably many of which must present themselves in each case, and all of which it would be proper for a jury to take into consideration, in deciding the question of an implied promise of pecuniary compensation upon either side

'The Court being all of opinion, that these are the proper subjects and sources of inquiry, for a jury, I repeat, that it seems unimportant, as a rule of future practice, whether the jury shall be instructed to inquire and decide upon all the circumstances of the case, whether there was an implied promise ; or that the proof of performance of services raises a presumption of such a promise, unless rebutted or controlled by all the circumstances of the case.

It only remains to state the judgment of the Court upon the present motion. This motion is on the part of the defendant, to set aside the verdict, and grant a new trial, on the ground of a misdirection of the judge, who tried the cause in point of law. Upon this question the Court being equally divided, the motion does not prevail; *Reed* v. *Davis*, 4 Pick. 217 ; and of course judgment is to be rendered on the verdict for the plaintiff.